In re Dennis Gregory NELSON and Barbara Bacon Nelson, Debtors.

Dennis Gregory Nelson and Barbara Bacon Nelson, Appellants,

v.

George Wong Pension Trust; American Mortgage Services; Amrane Cohen, Chapter 13 Trustee, Appellees.

BAP Nos. CC–08–1001–PaPeK, CC–08–1003–PaPeK, CC–08–1004–PaPeK.
Bankruptcy No. SA 07–12744–RK.
Adversary No. SA 07–01373–RK.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on May 15, 2008.

Filed June 26, 2008.

G. Thomas Leonard, Fullerton, CA, for Appellants, Dennis and Barbara Nelson.

David Brian Lally, Law Office of David Brian Lally Aliso Viejo, CA, for Appellees, George Wong Pension Trust.

Before: PAPPAS, PETERSON [1] and KLEIN, Bankruptcy Judges.

## OPINION

PAPPAS, Bankruptcy Judge:

These related appeals require us to consider whether there is ambiguity in the provision of 11 U.S.C. § 362(c)(4)(A)(i) [2] such that the automatic stay is not automatically in effect upon the filing of a third case by individual debtors who have been debtors in two prior cases within the previous year. The bankruptcy court entered two orders under § 362(c)(4)(A)(ii) confirming that no stay was in effect, and entered an order dismissing the debtors' adversary proceeding which sought a determination that appellee's postpetition foreclosure sale was invalid as a violation of the automatic stay.

Perceiving no ambiguity in the statute, we AFFIRM the order dismissing the adversary proceeding but DISMISS as moot the appeals from the § 362(c)(4)(A)(ii) orders because the bankruptcy case has been dismissed.

## FACTS

Appellant debtors Gregory and Barbara Nelson refinanced their residence in Fullerton, California (the "Property"), with American Mortgage Services ("AMS") in 2004. The Nelsons fell behind in their obligation to AMS due to a combination of a significant increase in mortgage payments and the unemployment of Barbara Nelson. To obtain the wherewithal to cure the arrearage to AMS, the appellants obtained a second mortgage from the George Wong Pension Trust ("Wong") in January 2006. Wong recorded a Notice of Default in May 2006.

On September 28, 2006, the Nelsons filed their first chapter 13 petition, acting pro se.[3] On November 13, 2006, the bankruptcy court granted the U.S. Trustee's motion to dismiss the case because the Nelsons did not submit evidence that they had attended credit counseling before filing the petition. §§ 109(h)(1), 521(i)(1).

Thereafter, Wong recorded a Trustee's Notice of Sale of the Property, which was first published on December 14, 2006. On December 19, 2006, the Nelsons filed a second chapter 13 petition; [4] this time they were represented by counsel, G. Thomas Leonard ("Leonard").

In the second bankruptcy case, the Nelsons proposed four different chapter 13 plans between December 2006 and August 2007. Their second bankruptcy case was dismissed by the bankruptcy court on August 29, 2007, for failure to confirm a plan.

The Nelsons admit in pleadings filed in the bankruptcy court that "when the debtors, Dennis Nelson and Barbara Nelson,

---

1. Hon. John L. Peterson, United States Bankruptcy Judge for the District of Montana, sitting by designation.

2. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

3. Bankr.C.D. Cal. Case No. SA–06–11705–RK.

4. Bankr.C.D. Cal. Case No. SA–06–12398–RK.

learned that there was a foreclosure sale set for September 1, 2007, they filed their third Chapter 13 bankruptcy [case] on August 31, 2007, Pro Se." [5] The Nelsons allege that they immediately notified Wong of the filing of the third bankruptcy petition.

A non-judicial trustee's foreclosure sale of the Property was conducted on September 7, 2007 (the "Foreclosure Sale"), at which Wong purchased their residence. A trustee's deed conveying it to Wong was recorded on September 24, 2007. Wong served a three-day notice to vacate the Property on the Nelsons on September 27, 2007.

On October 17, 2007, Wong filed an unlawful detainer action against the Nelsons in California Superior Court, Orange County, seeking possession of the Property. *Wong v. Nelson*, Case No. 30–2007/00022618 (the "Unlawful Detainer Action"). The Nelsons filed an answer to the Unlawful Detainer Action on October 31, 2007.

The Nelsons also commenced an adversary proceeding in the bankruptcy court against Wong.[6] Their complaint alleged that the Foreclosure Sale was void as having been conducted in violation of the automatic stay, that the sale should be set aside and the trustee's deed canceled, that sums paid by Wong to AMS in satisfaction of the first mortgage should be returned to Wong, and that the AMS first mortgage should be reinstated with any arrearages to be cured through the Nelsons' chapter 13 plan.

On November 9, 2007, the Nelsons filed a "Motion to Reimpose the Automatic Stay/Alternatively [for] Order Confirming Sale Was Stayed" (the Nelsons' "Stay Motion") in their bankruptcy case. In the Nelsons' Stay Motion, they sought either an order determining that the automatic stay was in effect on the date of the Foreclosure Sale, or an order retroactively imposing the stay pursuant to § 105(a).

On November 13, 2007, Wong filed a "Motion for Order Confirming Termination of Stay Under 11 U.S.C. § 362(j) or That No Stay Is in Effect Under 11 U.S.C. § 362(c)(4)(A)(ii)" (Wong's "No–Stay Motion") in the bankruptcy case. The No–Stay Motion represents that, because the Unlawful Detainer Action was pending in state court against the Nelsons, a "comfort order" from the bankruptcy court was needed to clarify for the state court that the automatic stay was not in effect at the time of the Foreclosure Sale.

Then, on November 14, 2007, Wong filed a Motion to Dismiss the adversary proceeding pursuant to FED.R.CIV.P. 12(b)(6), made applicable in bankruptcy cases by Rule 7012. As maintained in the No–Stay Motion, Wong argued in the Motion to Dismiss that the Nelsons had filed their third bankruptcy petition within a year in which their two prior bankruptcy cases were pending and dismissed and, therefore, no automatic stay was in effect as a result of the third bankruptcy filing at the time of the Foreclosure Sale.

The bankruptcy court conducted a hearing on Wong's No–Stay Motion on December 11, 2007. The Nelsons and Wong appeared through counsel. Although the hearings on the Nelsons' Stay Motion and Wong's Motion to Dismiss the adversary proceeding were scheduled to occur the following day, the parties agreed that a

---

**5.** Thus, the Nelsons' third bankruptcy petition was filed nine months and eighteen days after dismissal of their first petition.

**6.** On October 1, 2007, Leonard appeared as attorney for the Nelsons in the third bankruptcy case, and represented them in all further proceedings in that case and this appeal.

determination of a single critical issue by the bankruptcy court, whether the automatic stay was in effect at the time of the Foreclosure Sale, was dispositive as to all three motions. Tr. Hr'g 2:1—8:3 (December 11, 2007). With the consent of the parties, the bankruptcy court agreed to rule on all three motions at the hearing on December 11, 2007. After considering the arguments of the parties, the bankruptcy court ruled that there was no automatic stay in effect at the time of the Foreclosure Sale, because "the conditions under 362(c)(4)[ (A)(i) ] were met." Tr. Hr'g 12:12–13.

On December 19, 2007, the bankruptcy court entered an order granting Wong's No–Stay Motion, providing in part that "[t]he Court hereby confirms that no automatic stay pursuant to 11 U.S.C. Section 362 arose as to Movant upon the filing of the [third bankruptcy case] on August 31, 2007, and that no stay is now in effect, pursuant to 11 U.S.C. Section 362(c)(4)(A)(ii)." Also on December 19, 2007, the court entered orders denying the Nelsons' Stay Motion and dismissing the adversary proceeding. In denying the Nelsons' Stay Motion, the bankruptcy court ruled that "there was no stay in effect upon the filing of this third Petition by the Nelsons within one year pursuant to 11 U.S.C. Section 362(c)(4)."

On December 20, 2007, Wong and the Nelsons entered into a stipulation (the "Stipulation") for entry of a judgment in the Unlawful Detainer Action. In the Stipulation, the Nelsons agreed to surrender possession of the Property, and the parties agreed that "A Writ of Possession for possession only may issue upon entry of the judgment herein."

The Nelsons filed timely appeals of the orders entered by the bankruptcy court granting Wong's No–Stay Motion, denying the Nelsons' Stay Motion and dismissing the adversary proceeding, on December 27, 2007.

On January 25, 2008, the bankruptcy court dismissed the Nelsons' third bankruptcy case at a continued hearing on plan confirmation because they had not made required plan payments.[7]

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) & (G). The Panel has jurisdiction over the appeals pursuant to 28 U.S.C. § 158.

## ISSUES

1. Whether the appeals are moot.
2. Whether the bankruptcy court erred in ruling that no automatic stay was in effect at the time of the Foreclosure Sale.

## STANDARDS OF REVIEW

■ Mootness is a question of law reviewed de novo. *S. Or. Barter Fair v. Jackson County, Or.*, 372 F.3d 1128, 1133 (9th Cir.2004).

■ We review the bankruptcy court's interpretation of the Bankruptcy Code de novo. *Bankr. Receivables Mgmt. v. Lopez (In re Lopez)*, 345 F.3d 701, 705 (9th Cir. 2003).

---

7. On February 22, 2008, Wong moved to dismiss the appeal of the order denying the Nelsons' Stay Motion, BAP No. CC–08–1003, arguing that the appeal had been filed in bad faith and was moot; Wong sought sanctions for a frivolous appeal. Our motions panel denied Wong's motion without prejudice to reasserting its arguments before the merits panel.

■ A bankruptcy court's decision to dismiss an adversary proceeding pursuant to FED.R.CIV.P. 12(b)(6) for failure to state a claim is reviewed de novo. *Busseto Foods, Inc. v. Laizure (In re Laizure)*, 349 B.R. 604, 606 (9th Cir. BAP 2006). Such a motion to dismiss should only be granted if the complaint fails to allege facts raising "a right to relief above the speculative level. . . ." *Bell Atl. Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007).

## DISCUSSION

### I.

#### *Mootness*

Because the underlying bankruptcy case has been dismissed and the case dismissal was not appealed, Wong contends that the Nelsons can not be afforded any effective relief via these appeals.[8] Alternatively, because the Nelsons stipulated to surrender possession of the Property to Wong, and to the entry of a judgment in the Unlawful Detainer Action, Wong argues that the Nelsons effectively abandoned their appeal rights.

As discussed below, the Panel concludes that the appeal from the bankruptcy court's order dismissing the adversary proceeding is not moot because, if the Panel were to reverse the bankruptcy court's decision, the Nelsons could be afforded some relief. Therefore, whether the Foreclosure Sale violated the automatic stay is an issue that is properly decided by the Panel. On the other hand, Wong is correct that because the Nelsons' bankruptcy case has been dismissed, the Nelsons' appeals of the two orders entered in that bankruptcy case are moot.

### A.

■ The test for prudential mootness of an appeal is whether the appellate court can grant the appellant any effective relief in the event that it decides the matter on the merits in its favor. *Pilate v. Burrell (In re Burrell)*, 415 F.3d 994, 998 (9th Cir.2005). If it cannot grant effective relief, the appellate court lacks jurisdiction and must dismiss the appeal. *Church of Scientology v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992); *Pub. Util. Comm'n v. FERC*, 100 F.3d 1451, 1458 (9th Cir.1996). If it can grant such relief, the matter is not moot. *Garcia v. Lawn*, 805 F.2d 1400, 1402 (9th Cir.1986).

■ Wong argues in very general terms that the dismissal of the Nelsons' third bankruptcy case, and their failure to appeal or to seek a stay of that dismissal, prevents this Panel from granting any effective relief to the Nelsons. Implicit in this argument is that dismissal of the bankruptcy case deprives the Panel of jurisdiction over the appeals, and that it lacks authority to reverse the bankruptcy court's orders and to remand these matters to the bankruptcy court for entry of orders holding that the Foreclosure Sale was conducted in violation of the automatic stay, and thus was void.

With respect to the bankruptcy court's decision to dismiss the adversary proceeding, the case law is to the contrary. Both the Ninth Circuit and this Panel have held that an adversary proceeding may survive the dismissal of the underlying bankruptcy

---

**8.** Wong does not specify in its appellate brief which orders on appeal it contends are moot. As noted above, Wong's pre-argument motion for dismissal of these appeals focused on the appeal of the order denying the Nelsons' Stay Motion. Here, we first consider whether the appeal in the adversary proceeding is moot, before examining the status of the appeals of the bankruptcy case orders.

case. In *Davis v. Courington (In re Davis)*, 177 B.R. 907 (9th Cir. BAP 1995), the Panel held that, although the underlying bankruptcy case was dismissed, the bankruptcy court retained discretionary subject matter jurisdiction over an adversary proceeding to enforce the automatic stay. The *Davis* Panel based its ruling on earlier Ninth Circuit precedents holding that the bankruptcy court has discretion to retain or decline to exercise jurisdiction over pending adversary proceedings following dismissal of the bankruptcy case. *Carraher v. Morgan Elec., Inc. (In re Carraher)*, 971 F.2d 327, 328 (9th Cir.1992); *Beneficial Trust Deeds v. Franklin (In re Franklin)*, 802 F.2d 324, 326–27 (9th Cir. 1986).

In one opinion, the Ninth Circuit ruled that a bankruptcy court retained jurisdiction following dismissal of the bankruptcy case to remedy violations of the automatic stay. *40235 Washington St. Corp. v. Lusardi*, 329 F.3d 1076, 1080 (9th Cir.2003). Relying on *Lusardi*, *Davis* and other precedents, the Panel recently described it as "settled" that the bankruptcy court has jurisdiction to remedy violations of the automatic stay after dismissal of the bankruptcy case. *Johnson v. TRE Holdings,* *LLC (In re Johnson)*, 346 B.R. 190, 194 (9th Cir. BAP 2006).[9]

Here, the Nelsons' complaint in the adversary proceeding alleged that Wong willfully violated the automatic stay. Since the gravamen of the complaint was Wong's alleged violation of the stay, under Ninth Circuit and BAP precedent, if we reverse the dismissal of the adversary proceeding, we can remand to the bankruptcy court with instructions that it provide appropriate relief. While it is doubtful that the bankruptcy court could "undo" the Foreclosure Sale and restore the parties to the *status quo ante*, upon remand the Nelsons could seek to recover any actual damages they have suffered as a result of the alleged stay violation, together with their attorneys' fees and costs, and, if appropriate, punitive damages, all pursuant to § 362(k).[10] Because a potential award of money damages could constitute effective relief for Wong's alleged willful violation of the stay, the appeal of the dismissal of the adversary proceeding is not moot.

In *Suter v. Goedert*, 504 F.3d 982 (9th Cir.2007), the Ninth Circuit explained that the "party asserting mootness 'has the

---

**9.** To be precise, neither the Ninth Circuit nor the Panel presume that the bankruptcy court's jurisdiction over adversary proceedings is retained after dismissal of the bankruptcy case. Especially in contests involving state law claims founded upon the bankruptcy court's "related-to" jurisdiction, the Ninth Circuit requires the bankruptcy court to consider factors of judicial economy, convenience, fairness and comity before retaining jurisdiction of adversary proceedings after dismissal of the bankruptcy case. *Carraher*, 971 F.2d at 328; *Linkway Invest. Co. v. Olsen (In re Casamont Investors, Ltd.)*, 196 B.R. 517 (9th Cir. BAP 1996). However, where the adversary proceeding relates to the status or enforcement of the automatic stay, or other strictly bankruptcy law questions, the basis for the bankruptcy court's retention of jurisdiction is much stronger. *Davis*, 177 B.R. at 913 n. 3

("The bankruptcy court should exercise great care, however, in abstaining from proceedings arising under title 11, because of the court's expertise in such matters.").

**10.** This Code provision specifies, in pertinent part, that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." § 362(k)(1); *see Ozenne v. Bendon (In re Ozenne)*, 337 B.R. 214, 216 n. 2 and 222 (9th Cir. BAP 2006) (remanding to bankruptcy court for determination of damages for willful violation of stay under § 362(h), but noting that had the case been filed post-BAPCPA [as in this appeal], similar damages would be awarded under § 362(k)(1)).

heavy burden of establishing that there is no effective relief remaining for a court to provide.'" *Id.* at 986, quoting *Or. Advocacy Ctr. v. Mink,* 322 F.3d 1101, 1116–17 (9th Cir.2003). Wong has not satisfied its heavy burden of persuading the Panel that the Nelsons have no possible recourse in the adversary proceeding were the Panel to reverse the dismissal.

## B.

■ Wong makes an additional argument regarding mootness. Pointing to the Stipulation and judgment entered in the Unlawful Detainer Action, Wong contends that because the Nelsons agreed to vacate the Property and surrender it to Wong, the Nelsons indicated a clear intent not to pursue any further remedies with respect to the Property, and that the appeals should therefore be dismissed.

Wong's argument and reading of the Stipulation and judgment in the state court action assume too much. The Nelsons, by stipulating to entry of a judgment in state court, did not agree to forego these appeals, all of which were commenced *after* they entered into the Stipulation.

■ Wong's state court action was to recover possession of the Property via unlawful detainer, not to quiet title. As the California Supreme Court has explained, "a judgment in unlawful detainer usually has very limited res judicata effect and will not prevent one who is dispossessed from bringing a subsequent action to resolve questions of title or to adjudicate other legal and equitable claims between the parties." *Vella v. Hudgins,* 20 Cal.3d 251, 142 Cal.Rptr. 414, 572 P.2d 28, 30 (1977). Further, there is no indication that the parties in this case intended the Stipulation and judgment to settle questions of title. Instead, the Nelsons agreed in the Stipulation that "[a] Writ of Possession *for possession only* may issue upon entry of

the judgment herein." Because of the limited nature of the remedy sought by Wong in the Unlawful Detainer Action, and the narrow scope of the Nelsons' agreement in the Stipulation, it is clear that the Nelsons did not intend to forego their right to appeal the bankruptcy court's orders.

For these reasons, we conclude that the Nelsons' appeal of the bankruptcy court's order dismissing the adversary proceeding (BAP No. CC–08–1001) is not moot.

## C.

■ In contrast, the Nelsons' appeals of the two orders entered by the court in their bankruptcy case are moot. The Nelsons' Stay Motion sought alternative relief, either a determination that the stay was in effect on the date of the Foreclosure Sale or an order retroactively imposing the stay under § 105(a). The bankruptcy court denied both alternatives. In the order granting Wong's No–Stay Motion, the bankruptcy court confirmed that no stay was in effect pursuant to § 362(c)(4)(A)(ii).

Review of orders entered in the administration of a bankruptcy case, since dismissed, is usually a fruitless pursuit. Moreover, because the Nelsons can obtain effective relief in the adversary proceeding if the Panel decides to reverse and remand the action to the bankruptcy court, the Panel's review of the bankruptcy court's orders entered in the dismissed case is all the more a useless endeavor. While the legal issue raised in each of these appeals is the same as that raised by the appeal from dismissal of the adversary proceeding, and since the bankruptcy case has been dismissed and that order is now final, we conclude that the Panel can grant no effective relief to the Nelsons in these appeals. The Nelsons' appeals in Nos. CC–08–1003 and CC–08–1004 are moot and will be dismissed.

## II.

### *Section 362(c)(4)(A)*

The bankruptcy court ruled that, "[w]hen the third [bankruptcy] case was filed, no automatic stay arose because . . . the conditions under 362(c)(4)(a) were met." Tr. Hr'g 12:12–16. Based on that conclusion, the bankruptcy court dismissed the adversary proceeding, implicitly holding that the Nelsons' complaint failed to state a claim upon which relief could be granted.

The parties do not dispute the factual predicate relied upon by the bankruptcy court for invocation of § 362(c)(4)(A)(i): that when the Nelsons filed their chapter 13 petition on August 31, 2007, they had had two bankruptcy cases pending within the previous year that had been dismissed, and that the Foreclosure Sale occurred early in September 2007. The Nelsons, however, challenge the bankruptcy court's interpretation of § 362(c)(4)(A)(i), and its ruling that no automatic stay was in effect at the time of the Foreclosure Sale.

The bankruptcy court did not provide an extensive discussion of the reasons for its ruling. But under these facts, we do not believe detailed findings of fact and conclusions of law were required. Simply put, the bankruptcy court's interpretation and application of the clear terms of the statute to the undisputed facts were correct.

### A.

Statutory interpretation of bankruptcy legislation begins with the language of the statute: "When the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. United States Tr.*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004)(quoting *Hartford Underwriters Ins. Co. v. Un-*ion *Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)).

The relevant Bankruptcy Code provision, § 362(c)(4)(A), provides:

(i) if a single or joint case is filed by or against a debtor who is an individual under this title, and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed, other than a case refiled under section 707(b), the stay under subsection (a) shall not go into effect upon the filing of the later case; and

(ii) on request of a party in interest, the court shall promptly enter an order confirming that no stay is in effect[.]

Examining the words of the statute is the first principle of statutory interpretation. *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 300, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989). Section 362(c)(4)(A)(i) may be parsed into four phrases:

- "[I]f a single or joint case is filed by or against a debtor who is an individual under this title . . . ." From these words, the reader should understand that this subsection applies only to single or joint bankruptcy cases filed by or against individuals, and not cases filed by or against entities such as corporations or partnerships. *In re Montoya*, 333 B.R. 449, 455 n. 9 (Bankr.D.Utah 2005) (finding that the term "individual" as used in post-BAPCPA code section § 362(c) excludes corporations and businesses). Here, the Nelsons, who are individuals, commenced their third bankruptcy case when they filed a joint bankruptcy petition. Thus, the Nelsons' third case falls within the scope of this provision.

- "and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed . . . ." The Nelsons admit they had two joint

chapter 13 cases pending, both of which were dismissed, in the year before they filed their third chapter 13 petition.

- "other than a case refiled under section 707(b)...." The parties do not dispute the meaning or application of this phrase, nor do the Nelsons argue that this provision helps them. Because neither of the Nelsons' previous two cases was dismissed for "abuse" under § 707(b), this exception to the operation of this subsection does not apply.[11]

- "the stay under subsection (a) shall not go into effect upon the filing of the later case[.]"

The "subsection (a)" referred to in this phrase is § 362(a). That subsection, one of the most critical to the implementation of the policies of the Code, provides that the filing of a bankruptcy petition automatically operates as a stay against a broad array of creditor activities. In particular, subsections(a)(3) and (4) prohibit any act to create, perfect, or enforce any lien against property of the estate, or to create, perfect, or enforce against property of the debtor any lien to the extent such lien secures a claim that arose before the commencement of the case under the Bankruptcy Code. These stay provisions, if effective in the Nelsons' third bankruptcy case, would have protected the Property against Wong's foreclosure efforts. However, as the statute provides, if the conditions of subsection (c)(4)(A) are satisfied, the § 362(a) stay "shall not go into effect" upon the filing of a third bankruptcy petition.

### B.

The Nelsons argue that ambiguity in § 362(c)(4)(A) results from its placement in the Code, rather than from its language. In their view, because this provision is found in subsection (c) which deals, generally, with the duration of the automatic stay, and not in subsection (b), where many exceptions to the operation of the automatic stay appear, Congress must have intended that some sort of stay arise when the Nelsons filed their third bankruptcy case. The Nelsons reconcile the placement of this provision in subsection (c) by arguing that Congress must have intended that it was only the automatic stay provisions of § 362(a) relating to property of the debtor that did not go into effect, but that the stay did indeed arise to protect property of their bankruptcy estate when they filed their third petition.[12]

---

11. While of no import in this appeal, we parenthetically note the apparent drafting error in this phrase. Section 707(b) provides the grounds for dismissal or conversion of a case for abuse of chapter 7 and makes no reference to any "refiling" procedure. A parallel phrase in § 362(c)(3) would appear to supply the words missing in this provision: "other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)." If this exception were an issue, the Panel could refer to another section of a statute to supply terminology when its use in the other section helps make the ambiguous term clear. *See United Sav. Ass'n v. Timbers of Inwood Forest Assocs. Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

12. This account of the Nelsons' argument on appeal is probably more generous than justified from reading their briefs. Their Opening Brief at 11 suggests that the automatic stay (without qualification) went into effect on the filing of their third petition, but that the stay was subject to termination. The Nelsons note that § 362(b) contains over twenty subsections detailing situations in which no stay goes into effect upon commencement of a bankruptcy case. Since the provision relied upon by Wong and the bankruptcy court, § 362(c)(4)(A)(i), instead appears in subsection (c), which generally deals with the duration of the stay, the Nelsons suggest that Congress intended that an unqualified stay went into effect on filing the third petition but that it could be terminated by the bankruptcy

Since the Property was property of the estate on the date of the Foreclosure Sale, the Nelsons argue that sale violated the automatic stay, and should therefore be invalidated.

Of course, the Nelsons' interpretation of the Code ignores the precise language employed by Congress. To accept the Nelsons' position, a reader must somehow convert the phrase in § 362(c)(4)(A)(i) providing that the § 362(a) automatic stay "shall not go into effect" to one providing that "the stay arises and is in effect, but may be terminated."

Further, although the Nelsons are correct that § 362(b) governs exceptions to the stay, there is no reason why the (4)(A)(i) exception must appear in subsection (b). Indeed, there is at least one good reason why it is *not* found in § 362(b). Section 362(c)(4)(B) sets forth "an explicit substantive right and statutory procedure ... for a party in interest to seek the imposition of the stay, without the need to invoke the court's injunctive power under section 105." Alan N. Resnick & Henry J. Sommer, 3 COLLIER ON BANKRUPTCY ¶ 362.06[4] (15th ed. rev.2006). Section 362(b) provides no "self-contained" procedure for imposing a stay if one of the exceptions apply. In other words, placing the provisions in subsection (c)(4) in (b) could very well have required rewriting or amendment of the statute.

## C.

The Nelsons cite no authority to support their interpretation of the Code. They acknowledge in their Opening Brief that they

are not aware of any published cases which interpret 11 U.S.C. § 362(c)(4)(A)(i).

Our research has not located any decisions in which a court engaged in a detailed textual examination of § 362(c)(4)(A)(i) before concluding that no stay arises in a third bankruptcy case filed within one year. However, there are numerous reported decisions which, like the bankruptcy court in this appeal, simply rule that, where the factual predicate of § 362(c)(4)(A)(i) is satisfied, no stay arises with the filing of the third petition. *See, e.g., Dixon v. Fed. Nat'l Mortg. Ass'n (In re Dixon)*, 2006 WL 3371500 *2 (S.D.Tex. 2006); *Payen v. HSBC Mortg. Serv. (In re Payen)*, 2008 WL 545001 *1 (Bankr.D.Md. 2008); *In re Ferguson*, 376 B.R. 109, 118 (Bankr.E.D.Pa.2007); *In re Schroeder*, 356 B.R. 812, 812–13 (Bankr.M.D.Fla.2006); *In re Ortiz*, 355 B.R. 587, 590 (Bankr.S.D.Tex. 2006); *In re McBride*, 354 B.R. 95, 100 (Bankr.D.S.C.2006); *In re Winters*, 2006 WL 3392890 *1 (Bankr.W.D.Va.2006). In contrast, we have located no reported decisions in which a court determined that a stay was in effect when the factual conditions of § 362(c)(4)(A)(i) applied.

Further, many of the published decisions, in interpreting other provisions of the Code, point to the clarity of § 362(c)(4)(A)(i). For example, two appellate opinions contrast the clear meaning of § 362(c)(4)(A)(i) with possible ambiguities in the language found in § 362(c)(3)(A), the Code provision limiting the duration of the automatic stay in cases where the debtor has had one prior pending case in the previous year.[13] In one, the First Circuit BAP notes:

court. However, the Nelsons' Reply Brief at 2–3, seems to concede that, upon commencement of a third case, "there is 'no stay' as to acts against the individual debtors. The purpose behind 11 U.S.C. § 362 [(c)(4)(A)] is apparently to discourage multiple filings. By

not imposing the protection provided by the automatic stay this apparent purpose is met."

13. Section 362(c)(3)(A) provides:

(3) if a single or joint case is filed by or against a debtor who is an individual in a

With respect to debtors with two or more prior cases, section 362(c)(4)(A)(i) *clearly provides* that "the stay under subsection (a) shall not go into effect upon the filing of the later case." 11 U.S.C. § 362(c)(4)(A)(i).... Sections 362(c)(4)(A)(i) and 362(c)(3)(A) were both added by BAPCPA, and we are unconvinced that the significant difference in language between the two sections reveals a Congressional intent to say the very same thing.

*Jumpp v. Chase Home Fin., LLC (In re Jumpp)*, 356 B.R. 789, 795–96 (1st Cir. BAP 2006) (emphasis added). The Tenth Circuit BAP similarly observes:

> According to these courts, the automatic stay terminates under § 362(c)(3)(A) only with respect to the debtor and the debtor's property but not as to property of the estate. [citations omitted] These courts reason that if Congress meant to terminate the stay in its entirety, it would have done so *in plain language* as it did in § 362(c)(4)(A)(i).

*Holcomb v. Hardeman (In re Holcomb)*, 380 B.R. 813, 816 (10th Cir. BAP 2008) (emphasis added).

Other courts consider § 362(c)(4)(A)(i) to be unambiguous. *See e.g., In re Curry*, 362 B.R. 394, 399 (Bankr.N.D.Ill.2007) ("Section 362(c)(4)(A)(i) thereby provides *in no uncertain terms* that the automatic stay does not come into effect at all upon the filing of a debtor's third bankruptcy case within a one year period.") (emphasis added). Another court wrote: "Congress, in terminating aspects of the automatic stay in § 362(c)(3)(A), chose language that is so vastly different than the *straight*

*forward language* it used when it terminated all protections of the stay in § 362(c)(4)(A)(i)." *In re Paschal*, 337 B.R. 274, 279 (Bankr.E.D.N.C.2006) (emphasis added). *See also King v. Wells Fargo Bank, N.A. (In re King)*, 362 B.R. 226, 232 (Bankr.D.Md.2007) ("Section 362(c)(4)(A)(i) is unambiguous on its face[.]"); *In re Murray*, 350 B.R. 408, 413–14 (Bankr.S.D.Ohio 2006) ("There is no ambiguity in the relevant text of this provision [§ 362(c)(4) ] and the plain meaning reading does not produce a result demonstrably at odds with the expressed intent of Congress."); *In re Harris*, 342 B.R. 274, 279 (Bankr. N.D.Ohio 2006) ("Had Congress intended § 362(c)(3)(A) to completely terminate the automatic stay, it could have used the same straightforward language it used in § 362(c)(4)(A)(i).").

As can be seen, not only is there no decisional authority for the Nelsons' construction of § 362(c)(4)(A)(i), it is doubtful that, if the issue were to be presented, a court would endorse their interpretive approach.

### D.

The Nelsons' holistic examination of § 362(c)(4)(A)(i) is not inconsistent with a plain meaning analysis. *See Kokoszka v. Belford*, 417 U.S. 642, 650, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974) ("When interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute.")(internal quotation marks omitted). However, the Nelsons' analysis proves unsatisfactory.

---

case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1–year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)—

(A)the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case[.]

While not completely clear, the Nelsons apparently suggest that examination of all of the various provisions in § 362 reveals that two distinct types of stay automatically arise upon the filing of a bankruptcy petition: one stay that protects property of the debtor, and another that shields property of the bankruptcy estate. The Nelsons urge that, under § 362(c)(4)(A)(i), only one type of stay does not go into effect in a third bankruptcy case: that which protects property of the debtor. They reason, therefore, that the stay protecting property of the estate does arise upon a third filing, and shielded the Property from the Foreclosure Sale.

The Nelsons' fundamental analysis of the facets of the automatic stay is, as far as it goes, correct.[14] Other provisions of the Bankruptcy Code distinguish between the automatic stay as applied to property of the debtor and property of the estate. For example, § 362(c)(1) terminates the stay protecting property of the estate when it is no longer property of the estate, whereas § 362(c)(2) provides that the stay continues as to "any other act under subsection (a)" (*i.e.*, acts against the debtor, personally, or against property of the debtor) until a case is closed, dismissed, or a discharge is granted or denied. And § 521(a)(6), another new provision of BAPCPA, differentiates between property of the estate and property of the debtor in

terminating the automatic stay where the debtor does not reaffirm or redeem property within 45 days after the meeting of creditors. *See Jumpp*, 356 B.R. at 794 (discussing differences in operation in §§ 362(c)(1) and (c)(2), 521(a)(6), as well as other provisions of the Code, regarding termination of the stay as to property of the debtor and property of the estate).

In other words, the Nelsons are correct that this is evidence that Congress has, in some instances, indicated its intent to distinguish between the stay of enforcement against a debtor's property and that of the bankruptcy estate. However, the Nelsons' attempted leap of logic from this correct premise to their conclusion that § 362(c)(4)(A)(i) operates only to prevent operation of the automatic stay solely as to property of the debtor, and not as to property of the estate, falls short.

██ The Nelsons' argument is burdened by numerous deficiencies. As noted above, the Nelsons have supplied no authority, nor even reasoned argument, why § 362(c)(4)(A)(i) should be read to apply only to property of the debtor. There is no language in § 362(c)(4)(A)(i) that limits the stay in § 362(a). Rather, the statute states that "the stay under subsection (a) *shall not go into effect* upon the filing of the later case." (Emphasis added). Statutory interpretation does not allow us to go beyond or limit the "ordinary or natural

14. For example, upon the filing of a bankruptcy petition, § 362(a)(1) stays actions "against the debtor." Section 362(a)(2) stays enforcement of judgments against "the debtor or against property of the estate." Section 362(a)(3) stays actions to obtain possession of "property of the estate." Section 362(a)(4) prohibits actions to create or perfect liens "against property of the estate." Section 362(a)(5) stays actions involving prepetition liens against "property of the debtor." Section 362(a)(6) stays collection actions "against the debtor." Section 362(a)(7) enjoins setoff of "any claim against the debtor." And

§ 362(a)(8) stays Tax Court litigation of certain prepetition tax liabilities of a debtor.

While not important here, arguably, there are three, not two, different aspects to the § 362(a) automatic stay: the stay against actions against property of the debtor can be further subdivided into protections against "in personam" actions against the debtor (such as law suits to collect debts) and prohibitions against "in rem" actions taken against identifiable property of the debtor that is not property of the estate (such as attempts to repossess a debtor's exempt property).

meaning" of the statute's words. *FDIC v. Meyer,* 510 U.S. 471, 476, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Courts that have had an opportunity to comment on § 362(c)(4)(A)(i) have observed that *all aspects of the automatic stay* are interdicted by § 362(c)(4)(A)(i), not just the stay against taking acts against property of the debtor. *Holcomb,* 380 B.R. at 816 ("[I]f Congress meant to terminate the stay *in its entirety,* it would have done so in plain language as it did in § 362(c)(4)(A)(i)")(emphasis added); *Curry,* 362 B.R. at 399 ("Section 362(c)(4)(A)(i) thereby provides in no uncertain terms that the automatic stay does not come into effect *at all* upon the filing of a debtor's third bankruptcy case within a one year period.") (emphasis added); *Paschal,* 337 B.R. at 279 ("362 (c)(3)(A) is not as broad as § 362(c)(4)(A)(i) and ... *all of the protections* of the automatic stay are not eliminated by § 362(c)(3)(A)") (emphasis added); *Harris,* 342 B.R. at 279 ("Had Congress intended § 362(c)(3)(A) to *completely terminate* the automatic stay, it could have used the same straightforward language it used in § 362(c)(4)(A)(i).") (emphasis added).

 Secondly, while the Nelsons seem to argue that we should look to § 362(c)(3)(A) for guidance as to the distinction between the stay of enforcement against property of the Nelsons and prop-erty of the estate, neither the Ninth Circuit, this Panel, nor any of the circuit Courts of Appeals has yet ruled that § 362(c)(3)(A) only operates to terminate the stay against the debtor, not the stay against property of the estate.[15] But even if § 362(c)(3)(A) does distinguish between stays against the debtor and property of the estate, we cannot simply import an interpretation of § 362(c)(3) into (c)(4). To do so would violate a basic principle of statutory interpretation, which advises that when Congress uses particular language in one place in a statute, and does not use that language in another place, the omission should be deemed intentional. *Keene Corp. v. United States,* 508 U.S. 200, 208, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993); *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.")(quoting *United States v. Wong,* 472 F.2d 720, 722 (5th Cir.1972)).

Moreover, these two subsections of § 362(c), while both limiting the operation of the automatic stay in "repeat" bankruptcy cases, are aimed at distinctly different debtors.[16] *Jumpp,* 356 B.R. at 796

---

**15.** We acknowledge that the First Circuit BAP, in *Jumpp,* and many bankruptcy courts hold that § 362(c)(3)(A) applies only to termination of the stay against property of the debtor. We express no opinion concerning this issue.

**16.** Plainly read, these provisions are fundamentally different. Subsection (c)(4)(A) applies where three or more bankruptcy cases have been pending within one year, whereas subsection (c)(3)(A) operates in cases where only two bankruptcy cases have been pending in the same year. The former provides that no stay arises, the latter provides that there is a stay, but that it terminates in 30 days,

unless extended by the bankruptcy court upon request of an interested party, supported by a proper showing. Finally, subsection (c)(3)(A) provides that the stay "shall terminate with respect to the debtor," the apparent source for many courts to determine that (c)(3)(A) only applies to property of the debtor and not property of the estate. But such a limiting phrase does not appear in connection with (c)(4)(A). Instead, (c)(4)(A) provides that "the stay under subsection (a) shall not go into effect...." As noted above, the various aspects · of the automatic stay described in § 362(a) prohibit creditor actions against the

("[W]e are unconvinced that the significant difference in language between the two sections reveals a Congressional intent to say the very same thing. Rather, the language indicates an intent to differentially penalize previous filers based on the number of previous cases."); *Paschal,* 337 B.R. at 279 ("[Section] 362(c)(3)(A) is not as broad as § 362(c)(4)(A)(i)."). Clearly, Congress could, and did, intend the consequences of repeat filings to be different, and potentially more severe, as the number of successive filings increases.[17]

Finally, the Nelsons advance a public policy argument that "[i]f § 362(c)(A)(4)(i) (*sic*) is interpreted as [Wong suggests], no matter how much equity was in the property of the estate, creditors could foreclose to the detriment of other creditors without any supervision by the courts or the Chapter 7 (*sic*) Trustee."[18] While loss of the protection of the automatic stay in a third bankruptcy case may indeed prove detrimental to creditors in some situations, the Nelsons' argument fails to acknowledge that, under § 362(c)(4)(B), upon the prompt request of the trustee or other

interested party, the bankruptcy court may impose a stay against creditor action if the bankruptcy filing was made in good faith.

Moreover, in a case subject to § 362(c)(4)(A)(i), while property of the estate is not immune to enforcement of creditor interests, the estate's interest in that property is not extinguished or abandoned. Since it continues to constitute property of the estate, if a secured creditor forecloses on and sells the property, all proceeds from the sale not necessary to satisfy liens must be returned to the estate. *Catalano v. Comm'r,* 279 F.3d 682, 686–87 (9th Cir. 2002).[19]

▮▮▮▮ Finally, even if we were to find some merit in the Nelsons' public policy argument against enforcement of a statute, such arguments must necessarily fail in the face of an unambiguous statute. As our Court of Appeals cautions us, "[i]f the changes imposed by BAPCPA arose from poor policy choices that produced undesirable results, it is up to Congress, not the courts, to amend the statute. *See Lamie,* 540 U.S. at 542, 124 S.Ct. 1023." *Maney*

---

debtor, property of the debtor, and property of the estate.

**17.** For a recent discussion of the controversies regarding interpretation of § 362(c)(3), as well as the legislative history of the BAPCPA amendments to § 362(c), see Laura B. Bartell, *Staying the Serial Filer—Interpreting the New Exploding Stay Provisions of § 362(c)(3) of the Bankruptcy Code,* 82 AM. BANKR. L.J. 2, 201–227 (2008).

**18.** The Nelsons' Opening Br. at 15.

**19.** There is an intriguing question, about which the Panel expresses no view, whether a chapter 7 trustee may, under appropriate facts, avoid the post-petition involuntary transfer of property of the estate effected by a creditor's foreclosure sale in a case in which, because of § 362(c)(4), no automatic stay was in effect, by arguing that the transfer was "not authorized under [title 11] or by the court." § 549(a)(2)(B). *See also* Rule 6001

("Any entity asserting the validity of a transfer under § 549 of the Code shall have the burden of proof."). Since § 362(c)(4) is quite new, there is no case law examining this issue. In contrast, there is authority that a creditor's post-bankruptcy foreclosure sale is immune from assault by a trustee under § 549(a) because the bankruptcy court's grant of relief from the automatic stay under § 362(d) "authorizes" such a sale. *See Martin v. North Penn Savings & Loan (In re Martin),* 253 B.R. 346, 351 (M.D.Pa.2000); *Matheson v. Powell (In re Matheson),* 84 B.R. 435, 436 (Bankr.N.D.Tex.1987). *See also* Alan N. Resnick & Henry J. Sommer, 5 COLLIER ON BANKRUPTCY ¶ 549.04[4] (15th ed. rev. 2007) ("Transfers authorized by the bankruptcy court, such as foreclosure sales pursuant to an order granting relief from stay, . . . would also not be within the avoiding powers of the trustee [under § 549].").

*v. Kagenveama (In re Kagenveama),* 527 F.3d 990 (9th Cir.2008).

### E.

In sum, the Nelsons do not dispute that § 362(c)(4)(A)(i) was applicable in their third bankruptcy case because the Nelsons had two bankruptcy cases pending within the same year in which their third case was filed, and the two prior cases were dismissed for reasons other than under § 707(b). Section 362(c)(4)(A)(i) unambiguously specifies that "the stay under [§ 362(a)] shall not go into effect upon the filing of the [third] case." There is neither authority nor logical reason to infer that Congress intended that only the stay protecting property of the debtor did not arise when the Nelsons filed their third case. A plain reading analysis of § 362(c)(4)(A)(i) dictates that *no stay* arose. Accordingly, the bankruptcy court correctly ruled that "no automatic stay pursuant to 11 U.S.C. Section 362 arose as to [Wong] upon the filing of the [third bankruptcy] case on August 31, 2007, and that no stay is now in effect, pursuant to 11 U.S.C. Section 362(c)(4)(A)(ii)." The bankruptcy court did not err in dismissing the Nelsons' adversary complaint for failure to state a claim.

### CONCLUSION

We AFFIRM the order of the bankruptcy court in BAP No. 08–1001 dismissing the adversary proceeding for failure to state a claim. However, we DISMISS the Nelsons' appeals in BAP Nos. 08–1003 and 08–1004 from the orders entered in that case as moot.