**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. EC-17-1036-BHKu |
| AIAD SAMUEL and HODA SAMUEL, | Bk. No. 2:16-bk-21585 |
| Debtors. | |
| HODA SAMUEL, | |
| Appellant, | |
| v. | MEMORANDUM[*] |
| JPMORGAN CHASE BANK, N.A.; SCOTT M. SACKETT, Trustee; FAIRVIEW HOLDINGS II, LLC; U.S. TRUSTEE; AIAD SAMUEL, | |
| Appellees. | |

Submitted Without Oral Argument on June 21, 2018

Filed – July 31, 2018

Appeal from the United States Bankruptcy Court
for the Eastern District of California

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Michael S. McManus, Bankruptcy Judge, Presiding

———————

Appearances:    Appellant Hoda Samuel, pro se on brief;  Donald W.
                Fitzgerald, Jason E. Rios and Jennifer E. Niemann of
                Felderstein Fitzgerald Willoughby & Pascuzzi LLP on
                brief for Appellee Scott M. Sackett, Trustee.[**]

———————

Before:    BRAND, HURSH[***]and KURTZ, Bankruptcy Judges.

## INTRODUCTION

Chapter 11[1] debtor, Hoda Samuel[2], appeals an order granting the trustee's motion  for (1) use of cash collateral, (2) authorizing replacement liens, and (3) authorizing adequate protection payments for the period February 1, 2017 through April 30, 2017. We DISMISS the appeal as MOOT.

———————

[**] Appellees JPMorgan Chase Bank, N.A., Fairview Holdings II, LLC, the U.S. Trustee and Aiad Samuel did not appear in this appeal.

[***] Hon. Benjamin P. Hursh, Chief Bankruptcy Judge for the District of Montana, sitting by designation.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] Because Mrs. Samuel filed a joint chapter 11 case with her husband, we refer to Mr. Samuel as Aiad and Mrs. Samuel as Hoda to avoid any confusion. No disrespect is intended.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    The bankruptcy filing and appointment of trustee

Aiad and Hoda filed a chapter 11 bankruptcy case on March 15, 2016. Thereafter, they filed an amended petition and amended Schedules A/B and J. Only Aiad claimed an ownership interest in the nine investment properties listed on Schedule A. On May 10, 2016, the bankruptcy court appointed Scott M. Sackett ("Trustee") as the chapter 11 trustee for Aiad's and Hoda's bankruptcy estate.

### B.    Aiad's and Hoda's properties

#### 1.    Shopping Centers

The amended schedules identified Aiad's ownership interest in three shopping centers known as the West Sacramento Center, the Power Inn Center and the Stockton Blvd. Center (collectively, "Shopping Centers"). Although Aiad and Hoda failed to list any secured creditors for their real properties in Schedule D, Fairview Holdings II, LLC asserted a security interest in the West Sacramento Center and the rents generated from that center as cash collateral; JPMorgan Chase Bank, N.A. asserted a security interest in the Power Inn Center and the rents generated from that center as cash collateral; and the United States of America, which held a criminal restitution judgment lien for $3,029,412.64, asserted a security interest in all of the Shopping Centers and the rents generated from each center as cash collateral.

## 2. Residential Properties

The amended schedules also identified six residential rental properties. Only four of the six properties were rented around the time of the bankruptcy filing, and four of the six had been abandoned by the time the motion at issue was heard. The two remaining residential rental properties belonging to the estate were the 209 Prairie Circle property and the 148 Estes Way property (the "Residential Properties"), which rented for $825 and $1000, respectively. JPMorgan, Bank of America, N.A. and the Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of the CWALT, Inc., Alternative Loan Trust 2006-OA10 Mortgage Pass-Through Certificates, Series 2006-OA10, asserted a security interest in one or more of the Residential Properties and the rents therefrom. We refer to the secured creditors of the Shopping Centers and the Residential Properties collectively as the "Secured Creditors."

## C. Cash collateral motions and orders

Shortly after his appointment, Trustee filed his first motion for authority to use cash collateral and other relief, requesting authority to use cash collateral of the Secured Creditors related to the Shopping Centers and the Residential Properties through July 31, 2016. Specifically, Trustee sought to use the cash collateral to maintain the monthly operations of the Shopping Centers and Residential Properties and to preserve their going concern value. Trustee also sought to grant like-kind replacement liens to

the Secured Creditors in the cash collateral account balance to secure any decline in value in their respective interest in the collateral resulting from the use of the cash collateral. As further adequate protection for the Secured Creditors, Trustee requested authorization to pay any stipulating creditors adequate protection payments each month up to $5,000. Hoda did not oppose the first cash collateral motion. The bankruptcy court granted the first cash collateral motion, authorizing the use of cash collateral through July 31, 2016.

Thereafter, Trustee filed three more motions for further use of cash collateral on the same terms and conditions as in his first motion. The bankruptcy court granted all three motions. The record shows that Hoda was served with these motions, but she never filed a written opposition or appeared at any of the hearings. It is only the last order — the Fourth Cash Collateral Order for the period February 1, 2017 through April 30, 2017— that Hoda appeals. Although Aiad appeared at the January 23, 2017 hearing related to the Fourth Cash Collateral Order, he made no objections to the motion.

## D.    Sale of the Shopping Centers

Several weeks prior to entry of the Fourth Cash Collateral Order, Trustee filed motions for authority to sell each of the Shopping Centers. The bankruptcy court approved the sales. The sales for the Shopping

Centers closed in March 2017, after this appeal was filed.[3]

## II.  JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(M). We explain our jurisdiction below.

## III.  ISSUES

1.     Does Hoda have standing to appeal even though she failed to object to the cash collateral motion?

2.     Is the appeal equitably moot?

## IV.  STANDARDS OF REVIEW

Mootness and standing are questions of law reviewed de novo. *Motor Veh. Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 879 (9th Cir. 2012) (standing); *Nelson v. George Wong Pension Tr. (In re Nelson)*, 391 B.R. 437, 442 (9th Cir. BAP 2008) (mootness).

## V.  DISCUSSION

**A.     Hoda has standing to appeal.**

Trustee contends that Hoda lacks standing to appeal the Fourth Cash Collateral Order because she was given proper notice and failed to attend the hearing or file an objection. *See Brady v. Andrew (In re Commercial W. Fin. Corp.)*, 761 F.2d 1329, 1334-35 (9th Cir. 1985) (stating in dicta that

---

[3] We disagree with Trustee that the sale of the Shopping Centers moots the appeal of the Fourth Cash Collateral Order. While the majority of the funds subject to that order were used for the Shopping Centers, some were used for the Residential Properties. It is unclear whether those properties have been sold, and Trustee does not assert that they have.

attendance and objection should usually be prerequisites to fulfilling the "person aggrieved" standard in bankruptcy appeals). Although notice to Hoda appears proper, she asserts that she has received virtually no mail from the bankruptcy court while in prison. Therefore, it is possible she did not receive timely (or any) notice of the motion and hearing, although she does not say that is the case. In any event, we reject Trustee's argument.

"Bankruptcy standing concerns whether an individual or entity is 'aggrieved,' not whether one makes that known to the bankruptcy court." *Harkey v. Grobstein (In re Point Ctr. Fin., Inc.)*, 890 F.3d 1188, 1193 (9th Cir. 2018) (reversing district court's dismissal of appeal for appellant's lack of standing based on failure to object before the bankruptcy court). In *Harkey*, the Ninth Circuit Court of Appeals recognized the nuance of bankruptcy cases, in that a party need not have attended the hearing and made objections to be directly and adversely affected by the bankruptcy court's decision. Agreeing with the Fourth Circuit case of *White v. Univision of Virginia Inc. (In re Urban Broadcasting Corporation)*, 401 F.3d 236, 244 (4th Cir. 2005), the *Harkey* court held that "an appellant's failure to attend and object at a bankruptcy court hearing has no bearing on the question of whether that appellant has standing to appeal a bankruptcy court order." *Id.* Therefore, Hoda's failure to attend the hearing and object does not affect

her standing to appeal.[4]

**B.     The appeal is equitably moot.**

Trustee argues that the appeal is equitably moot and therefore should be dismissed. We ordered Hoda to address this in her reply brief, but her arguments regarding mootness do not concern the use of cash collateral, the only issue in this appeal.

We lack jurisdiction over a moot appeal. *United States v. Pattullo (In re Pattullo)*, 271 F.3d 898, 900 (9th Cir. 2001). We must dismiss the appeal if it is constitutionally moot and may dismiss if we deem it equitably moot. *See Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 33-35 (9th Cir. BAP 2008).

Equitable mootness arises "when there has been a comprehensive change of circumstances . . . so as to render it inequitable for this court to consider the merits of the appeal." *Rev Op Grp. v. ML Manager LLC (In re Mortgs., Ltd.)*, 771 F.3d 1211, 1214 (9th Cir. 2014). For an appeal to be equitably moot, "[t]he question is whether the case presents transactions that are so complex or difficult to unwind that the doctrine of equitable mootness would apply." *In re Thorpe Insulation Co.*, 677 F.3d at 880 (internal quotation marks and citation omitted). In other words, "[e]quitable mootness concerns whether changes to the status quo following the order

---

[4] While failure to attend and object does not present a jurisdictional standing issue, it may result in waiver or forfeiture of the right to make certain arguments or object to certain claims.  *Harkey*, 890 F.3d at 1193.

being appealed make it impractical or inequitable to unscramble the eggs." *Castaic Partners II, LLC v. Daca-Castaic, LLC (In re Castaic Partners II, LLC),* 823 F.3d 966, 968 (9th Cir. 2016) (internal quotation marks and citation omitted).

To determine whether an appeal is equitably moot, the Ninth Circuit applies a four-factor test, looking to (1) whether a stay was sought; (2) if a stay was sought and not gained, whether substantial consummation of the plan has occurred; (3) what effect a remedy would have on third parties not before the court; and (4) whether the bankruptcy court can fashion effective and equitable relief. *See JPMCC 2007-C1 Grasslawn Lodging, LLC v. Transwest Resort Props., Inc. (In re Transwest Resort Props., Inc.),* 801 F.3d 1161, 1167-68 (9th Cir. 2015); *In re Thorpe Insulation Co.,* 677 F.3d at 881.

As for the first and second factors, Hoda did seek a stay from the Panel, but it was denied. In any case, the Fourth Cash Collateral Order is more than substantially consummated; it is complete. The Fourth Cash Collateral Order, which authorized the use of cash collateral for the period February 1, 2017 through April 30, 2017, passed over a year ago. Without a stay, Trustee used the cash collateral to pay third parties for the purpose of operating and maintaining the Shopping Centers and the Residential Properties. These factors weigh heavily in favor of mootness.

The third and fourth factors require us to consider the effects on third parties not before the court of any available remedy and whether such

9

remedy would create a difficult and essentially unmanageable situation for the bankruptcy court. These factors also weigh in favor of mootness. The third parties who received the cash collateral funds are not before this court. They have relied on the bankruptcy court's order and presumably spent the funds long ago. Thus, clawing back money from these third parties would be largely impracticable, even if possible. That is particularly true with the Shopping Centers, which have all been sold to third-party, good faith purchasers. As a result, it is not possible to fashion relief that is both effective and equitable.

Accordingly, the appeal of the Fourth Cash Collateral Order is DISMISSED as MOOT. *See Dahlquist v. First Nat'l Bank*, 737 F.2d 733, 735 (8th Cir. 1984) (holding that an appeal of a cash collateral order is moot if the funds have been spent); *Congress Fin. Corp. v. Shepard Clothing Co. (In re Shepard Clothing Co.)*, 2002 WL 1739021, at *1 (D. Mass. July 26, 2002) (appeal moot where the time period covered by the cash collateral order has expired and the collateral authorized to be spent has been used); *Bankwest, N.A. v. Todd*, 49 B.R. 633, 637-38 (D.S.D. 1985) (court finding cash collateral order moot to the extent of the amounts already expended by debtors, but finding appeal still equitably moot as to the unspent funds because it would be both "economially unwise and inequitable" to reverse the cash collateral order).

Notwithstanding the mootness of this appeal, we note that Hoda's

opening brief fails to articulate any argument whatsoever for how the bankruptcy court erred by entering the Fourth Cash Collateral Order. Accordingly, she has waived or abandoned any challenge to it. *See Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1020 (9th Cir. 2011) (pro se appellant waived issues not supported by argument in opening brief); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir.1988) (issues not argued on appeal by pro se litigant are deemed abandoned).

## VI.  CONCLUSION

For the reasons stated above, we DISMISS the appeal as MOOT.